•By the Court, Cowen, J.
J. The argument by which those who advance money or discharge debts on the faith of paper executed under letters of . attorney like this, .claim that. the *281 principal should be bound at all events, is, that he has authorized another in general words and without any qualification to give his notes. That having given such authority, he cannot require any person who takes under it to notice and decide at his peril whether the agent act in good faith towards his principal or not. That he has virtually authorized his agent to speak conclusively and by way of estoppel as to all extrinsic circumstances—all facts not apparent on the face of the power, or actually known to the man who trusts to it. That the attorney, by the very act of making the note &c. does, in effect, declare that it is available. Some of us felt so much difficulty upon this argument in The North River Bank v. Ay mar, that we held the question under advisement, and directed a second discussion, which took place in the course of the same term at which the present case was argued. (May term, 1842.) The answer given to the argument is, that such letters of attorney import, in their own nature, an obligation to act for and in behalf of the principal and in his proper business ; that the man who receives the note is bound to look to the power, and in so doing must take notice of its legal effect at his peril; that he is therefore bound to see that the attorney does not go beyond his power by making or endorsing notes for the benefit of himself or persons other than his principal. The authorities pro and con are cited in The North River Bank v. Aymar, (ante p. 262.)
But we are all of the opinion that the necessity for weighing these arguments does not exist in the case before us. It cannot be pretended that, where the person who takes the note is aware of the attorney acting fraudulently towards his principal, there is any color for insisting on the ground of estoppel. There is no doubt that a power drawn up nakedly to do acts for and in the name of the principal, negatives all idea of interest in the agent, or authority to act for the benefit of any one beside the principal. This limitation, therefore, the plaintiff was bound to notice. It is an intrinsic fact, and when he is moreover told that the attorney, as between himself and prin *282 cipal, is abusing his trust, the reason for making the act conclusive entirely ceases. The plaintiff himself then becomes a party to the fraud. In this case, he must be presumed to have known who it was that constituted the insolvent firm of George W. Tysen & Co., the payees of the note—a firm which had just compromised with him—and that this defendant was therefore not a member of the firm. Had he been, there was no need of George acting as attorney. When a person sees the note of a stranger made and endorsed by one of the payees to discharge their own debt, and takes such an endorsement, he has seen enough, in connection with the power, to raise a strong suspicion, not to say conviction, that the whole is a fraud upon that stranger. It is too much to allow that he may shut his eyes and say, he supposed there was some special circumstances on which the attorney had a right thus to act. The transaction is, Oft its face, out of the ordinary course of business. This was of itself sufficient to put him on enquiry. In the case of The North River Bank v. Aymar, it was assumed that the plaintiffs were bona fide hofders.
We are therefore of opinion that the circuit judge was right in directing a verdict for the defendant.
New trial denied.